OCTOBER TERM, 1867. 583

State ex rel. Auditor v. Clerk Jefferson Co. Ct.

STATE *ex rel.* STATE AUDITOR, Relator, *v.* THE CLERK OF THE COUNTY COURT OF JEFFERSON COUNTY, Respondent.

*Revenue—Levy—Militia Tax*, 1863—*Omission*.—The military tax directed to be levied by the act of March 9, 1863 (Sess. Acts, p. 25), was to be levied in accordance with the general assessment made for that year. The general revenue act, G. S. 1865, p. 75, made the necessary provisions for a remedy in cases in which counties had omitted to levy the tax at the proper time, by requiring the clerk of the County Court to make out a supplemental tax-book for the collection of the omitted tax, upon the assessment for the year in which there was a failure to levy and collect the tax.

*Petition for Mandamus.*

*Krum, Decker & Krum,* for relator.

I. Mandamus is the proper remedy to compel a public officer to perform a ministerial duty, and there can be no question of the power of this court over the subject-matter or the person—3 Black. Com. 110 ; Marbury v. Madison, 1 Cranch, 62 ; Postmaster-Gen. v. U. S., 12 Pet. 524 ; Reeside v. Treas. U. S., 11 How. (U. S.) 287.

Under § 75, p. 110, G. S. 1865, it was the duty of respondent, when officially notified by the relator, to make out this supplementary tax-book.

II. The only question upon which any doubt can arise is, whether the tax imposed by the " Act to provide the means for the payment and support of the militia, approved March 9, 1863 " (Sess. Acts 1863, p. 25), was levied and collectable in the year 1863 ; in other words, whether it should have been placed on the tax-book for 1863 by the clerk or assessor.

When the intention is clearly ascertained, it should be carried into effect even though it should seem contrary to the letter of the act—Bac. Abridg., tit. Stat. Construction, 4 ; Jackson v. Collins, 3 Cow. 89 ; Wilkinson v. Leland, 2 Pet. 662 ; People v. Utica Ins. Co., 15 John. 358 ; Munn v. Mech. Bk., 1 Pet. 64.

A thing that is within the intention of the law-makers of a statute, is as much within the statute as if it were within the letter ; and a thing, although within the letter, is not within

the statute, if it is not also within the intention of the law-makers—1 Black. Com. 59.   How is this intention ascertained ?   In various modes :  (a) In examining the cause or necessity for making it ;  (b)  The circumstances under which it was passed ;  (c)  The remedy intended to be promoted ;  (d)  The policy of the enactment ;  (e)  The general system of legislation upon the subject preceding or subsequent, repealed or unrepealed ;  (f)  A long and uninterrupted practice is good evidence of the construction of the act.—McKeen v. Delancy, 5 Cranch. 22.

The object of this statute under consideration is plainly stated in the title, and appears fully in the several parts of the act ; this object is to pay the militia for past services as well as accruing services within twelve months.   The payment is to be made in twelve months, out of a fund created from taxes to be collected within twelve months.   No construction will be adopted which will delay the (payment of these taxes (which are to create this fund) for two years. The act itself provides that it and all its parts shall go into immediate force and effect.   The court will not construe the statute so as to delay the operation of the 12th section, which is the very marrow of the act, for a whole year.

By the 12th section, this tax is imposed ; by the last section, it is provided that this act "shall go into effect from and after its passage."   By the act, the bonds of the State were to be immediately issued to the soldiers, for past services as well as accruing services, to the amount of three million of dollars, in denominations of one, three, five, ten and twenty dollars, and all payable within twelve months, out of the treasury from the Union Military fund.   Unless the 12th section is construed, to go into effect at once, and as imposing a tax collectable with the other taxes in the fall of 1864, under the general revenue laws, the whole purpose of the enactment fails.   The bonds were payable directly out of the Union Military fund by the Treasurer without any auditing thereof.   They are notes of the State already audited when issued, and payable with interest in twelve months.

The error into which the respondent has fallen consists in confounding the terms "levy" and "assessment" as used in the 12th section. The "levy" and "assessment" are separate and distinct things. The "levy" of a tax is made by the Legislature either by general or special law. The Constitution contains no provision regulating this power. The tax may be levied upon an existing valuation or assessment; the tax is levied by the act immediately upon all property then in the State, and is to be entered upon the existing "assessment."

The "assessment" is merely a "listing of property" and valuation which may be made yearly, biennially, or at such longer periods as the Legislature may determine. In some of the States this "valuation" or "listing" is made every ten years. In this State the statute provides for an annual "listing" or "assessment." But when an immediate special tax is imposed without determining that it shall be upon a future assessment, it must be construed to be made upon the then existing "listing" or "assessment"—Bouv. Law Dic., "Assessment," "Levy."

Nor can this be called a retrospective act, for it can only operate upon the property—upon the party owning the property at the time the tax is levied—and the county courts are clothed with ample power to regulate mistakes. By act of February 20, 1865 (Sess. Acts 1865, p. 112), two special taxes were levied; one, a two mill tax, for the revenue fund was made upon the basis of the assessment made in September, 1864 (see § 1), and another, an income tax, was levied by the other four sections upon a new assessment to be made under the act. So by act of March 12, 1867 (Sess. Acts 1867, p. 157), two distinct taxes were levied upon the basis of an assessment already made, to-wit, in September, 1866. So also by act of December 20, 1866 (Acts 1866, pp. 93-4, § 4), a special tax was levied for the year 1866, upon the basis of an assessment then made, to-wit, September, 1865. All these instances go to prove that a tax may be levied by the Legislature upon the basis of an assessment already made

upon a new assessment when so provided; but when there is no new assessment ordered or enacted, the then existing assessment is to be the basis for the first levy of such tax.

In this connection, in may be observed that the tax-book for 1863 was to be delivered to the collector for collection in July, 1863; so there was ample time given the clerk for entering the levy of this tax according to law.

*J. Williams*, for respondent.

I. A peremptory mandamus ought to be refused, because there was no law in force in the State of Missouri in 1863 authorizing the assessment and collection of a separate and special tax for military purposes.

(*a*) The revenue law of March 27, 1861, was in force and governed in the assessment of the revenue for the year 1863, the 10th section of the 2d article of the revenue act of 1861 (Sess. Acts 1860–61, p. 65) fixes the time for the assessment to commence on the 1st day of September; hence the tax for 1863 was to be assessed on the 1st of September, 1862. The 41st section of the same article requires the assessor to make out the tax-book and return it to the clerk's office of the County Court on or before the 1st day of February in each year. The 42d section requires the County Court to sit as a court of appeals on the 3d Monday in February, to hear and determine all appeals from erroneous assessments, &c. The 46th section requires the County Court to hear all appeals from erroneous assessments, &c. The 47th section requires the clerk of the County Court to make out the tax-book as corrected and deliver it to the collector. The tax-book as corrected and adjusted by the court of appeals could not be altered, except in certain cases a tax might be altered before payment upon the complainant showing good cause upon oath for not having attended the court of appeals—§ 51, Art. 2, Sess. Acts 1860–61, p. 70.

(*b*) The record of the County Court shows that the court of appeals was held in Jefferson county at the time fixed by law, viz., 3d Monday in February, 1863; so the tax-book for

that year had passed out of the hands of the assessor, and also beyond the control of the County Court, before the "Act to provide means for the support and payment of the enrolled militia," &c., had become a law, for the act was not approved till March 9, 1863.

II. The circular of Wm. S. Mosley, auditor, dated June 15, 1863, directing the clerk of the County Court to make a supplemental tax-book for a special military tax, was a nullity. The auditor had no authority to require the clerk to make such a book; there is nothing in the revenue law of 1861 authorizing the clerk of the County Court to make out a supplemental tax-book or to levy a tax.

III. Sec. 12 of the "Act to provide means for the support of the militia," approved March 9, 1863, provided that the military tax "shall be levied, assessed and collected in the same manner as other taxes." This shows that the Legislature intended the act to operate prospectively and not retrospectively, for the Legislature knew that the tax-book had been made out by the assessor, and that the court of appeals was passed and the tax-book in the hands of the collector in every county in the State before the act for the assessment of the military tax was passed. If, then, the Legislature had intended that this military tax should be collected for 1863, they would have provided in the act for its assessment and collection. They failed to do this; therefore, to construe the act so as to require the military tax to be levied for 1863, would be to give it a retrospective operation. This is never to be done unless the intention of the Legislature is palpable—Bac. 224, 295; 1 Scam. 335; 3 A. K. Marsh, 138; 5 Mon. 129, 140; 7 John, 477; 3 Me. 333; 3 Eng. Law & Eq. 30.

IV. The 12th section of the act requiring the military tax to be collected, &c., is general in its terms. It says, "shall be assessed, &c., as other taxes"; it is therefore to be construed according to the course of the common law—6 Bac. Abr., tit. Stat. 383–4.

V. Again, as the act for the levy, &c., of the military tax

(§ 12, "Act to provide for the assessment, levy, &c., of a military tax," approved March 9, 1863) does not provide for the collection of the tax, &c., for the year 1863, it cannot be so construed as to require the levy and collection for that year, for the reason that it is a tax law, is in derogation of the common law, and must be strictly construed and strictly pursued—Blackw. Tax Title, 86; Stierlein v. Daley, 37 Mo. 483.

HOLMES, Judge, delivered the opinion of the court.

The petition prays for a *mandamus* upon the clerk of the County Court of Jefferson county, directing him to make out a supplemental tax-book, in pursuance of the 75th section of the revenue act (Gen. Stat. 1866, ch. 12, § 75) for the levy and collection of the military tax in said county for the year 1863, which tax was omitted to be levied and collected at the proper time, under the provisions of the act entitled "An act to provide means for the payment and support of the Enrolled Militia" &c., approved March 9, 1863 (Reg. Sess. p. 25).

The return to the alternative writ admits the material facts, and the demurrer to the return raises the questions of law: First, whether this military tax was required by the act to be levied and collected for the year 1863, upon the assessment for that year? and second, if so, whether the failure to levy can now be remedied under existing laws?

We are very well satisfied that it was the proper effect and intention of the act of 1863, that the tax should be levied and collected for that year, upon the assessment which had already been completed, or was then in progress. The act took effect immediately. It required that this tax should be "levied, assessed and collected in the same manner as other taxes." No provision was made for any special assessment, and it is evident that it was supposed that the general revenue laws then in force would be ample for the purpose of enabling the public officers to cary the act into effect. Such seems to have been the contemporaneous construction. Nearly all the counties proceeded, under the instructions of the State auditor, to

levy and collect the tax for the year 1863. Some few counties failed to make the levy. The fact that the tax-books for that year, in this county, had been adjusted before the court of appeals, and had passed out of the hands of the county court, before the passage of this act, may furnish an explanation of the reason why this tax was not levied and collected for that year. It amounts only to a failure to make the levy as the law required. Any other construction would do great injustice to the other counties which have paid this tax, and might result in serious inconvenience to the State. There is nothing in the terms of the act which imperatively demands a different construction; and there can be little doubt that such is the true intent and meaning of the law, and it must be held to be the proper construction.

It is equally clear that the general revenue act of 1866 (§ 75) makes the necessary provision for remedying this omission. It is objected that there would be great inequality and injustice in making the levy for the omitted tax of that year upon the basis of the present assessment in that county. This would be very true, if such were the necessary consequence; but the law does not require that to be done. This section expressly provides that "when, for any cause, there has been a failure to levy the proper rate of taxes, or any portion of them, in any county, for any year or years, the clerk for the time being shall make a supplemental tax-book for such year or years, when officially notified by the auditor," and that "such supplemental tax-book shall be made *upon the assessment for the time being*, the tax for each year to be in a separate book, and to be levied and collected at the proper time." It is obvious that *the* assessment *for the time being*, here spoken of, is intended to refer to the year or years in which there was a failure to levy and collect the tax, and means that the supplemental tax-book, in such case, shall be based upon the assessment for the year in which the tax was omitted, and not to any existing assessment. This construction would be in accordance with the reason and justice of the thing; it does no violence to the

natural sense of words ; and there is scarcely room for doubt that·such was the intention of the law.

We·see no practical difficulty, nor any injustice in requiring the county to proceed in the levy and collection of this tax.

A peremptory *mandamus* will be ordered. Judge Wagner concurs ; Judge Fagg absent.